# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

<table>
<tr><td>

IVORY HEMINGWAY,
    *Plaintiff*,

    v.

CHRISTINE WHIDDEN, ANTONIO
SANTIAGO, JOHN ALDI, PAPOOSHA,
EMMA, AND CHEESIT,
    *Defendants*.

</td><td>

No. 3:19-cv-1457 (VAB)

</td></tr>
</table>

## INITIAL REVIEW ORDER

Ivory Hemingway ("Plaintiff"), a prisoner currently confined at the Corrigan-Radgowski Correctional Institution ("Corrigan") in Uncasville, Connecticut, filed a Complaint *pro se* under 42 U.S.C. § 1983 against six Department of Correction ("DOC") officials in their individual capacities: Director of Security Christine Whidden, Director of Security Antonio Santiago, Security Risk Group ("SRG") Coordinator John Aldi, SRG Coordinator Papoosha, Correction Officer Emma, and Lieutenant Cheesit (collectively "Defendants"). Complaint, ECF No. 1 (Sept. 17, 2019) ("Compl.").

Mr. Hemingway claims that the defendants violated his constitutional rights by illegally confiscating his personal property during his parole hearing and classifying him as a Security Risk Group inmate based on material found during this search and seizure. *See id.* at 5–8. He seeks monetary and declaratory relief. *Id.* at 18.

On September 19, 2019, Magistrate Judge William I. Garfinkel granted Mr. Hemingway's motion to proceed *in forma pauperis*. *See* Order, ECF No. 6 (Sept. 19, 2019). For the following reasons, the Complaint is **DISMISSED** in part.

The Fourteenth Amendment due process claims against Correction Officer Emma and Lieutenant Cheesit, the inhumane conditions of confinement claim, the Fifth Amendment claim, and the request for declaratory relief all are dismissed from the Complaint.

The First Amendment claim against "SRG" Coordinator Aldi, and the Fourteenth Amendment due process claims against Director of Security Whidden, Director of Security Santiago, SRG Coordinator John Aldi, SRG Coordinator Papoosha, all survive this initial review.

## I.     BACKGROUND

On September 6, 2011, Mr. Hemingway allegedly was incarcerated at the Hartford Correctional Center as a pretrial detainee. Compl. at 11. He pled guilty on March 26, 2012 to assault in the first degree with a firearm[1] and criminal possession of a pistol or revolver[2] and received a sentence of five years of incarceration plus five years of special parole. *State v. Hemingway*, C.A. No. HHD-CR-110654735T (Conn. Super. Ct. Mar. 26, 2012).

After seven months at the Hartford Correctional Center, DOC officials allegedly sent Mr. Hemingway to a restrictive housing unit because local law enforcement had informed them that he had ties to a gang. *Id.* DOC officials allegedly told Mr. Hemingway that they had found a letter written to him from another inmate which indicated a gang affiliation, the Bloods. *Id.* DOC officials allegedly sent Mr. Hemingway to phase one of the Security Risk Group program at the Northern Correctional Institution ("Northern"). *Id.* He allegedly completed the Security Risk Group program in August 2013, while incarcerated at the MacDougall-Walker Correctional Institution. *Id.* In February 2015, DOC officials allegedly sent him to the Carl Robinson Correctional Institution to complete his sentence. *Id.*

---

[1] Conn. Gen. Stat. § 53a-59(a)(5).
[2] Conn. Gen. Stat. § 53a-217c.

While incarcerated at the Carl Robinson Correctional Institution, Mr. Hemingway allegedly had a fight with another inmate. *Id.* Mr. Hemingway then allegedly had to have a disciplinary hearing, and it was determined that the altercation was gang-related. *Id.* Consequently, Mr. Hemingway allegedly had to return to phase one of the Security Risk Group program at Northern. *Id.*

DOC officials allegedly explained to Mr. Hemingway that he would have to serve two years in the SRG program before he could be transferred back to general population, since it would be his second time in the program. *Id.* On August 2, 2016, however, Mr. Hemingway allegedly completed his five-year sentence and DOC officials allegedly sent him to a half-way house to complete his special parole term. *Id.*

While Mr. Hemingway allegedly was on parole, the Director at the halfway house allegedly intercepted a letter sent to him from a federal inmate. *Id.* at 12 The Director allegedly asked Mr. Hemingway if he knew the individual who wrote the letter. *Id.*. Mr. Hemingway allegedly stated that he did not know anyone who was incarcerated in federal prison. *Id.* The director then allegedly called SRG Coordinator Aldi. *Id.* SRG Coordinator Aldi allegedly went to the halfway house and took possession of Mr. Hemingway's mobile phone, stating that he needed it to look for gang activity. *Id.* Mr. Hemingway allegedly gave him the password to the phone. *Id.*

A few days later, Mr. Alidi allegedly asked for Mr. Hemingway's password again, which he gave. *Id.* SRG Coordinator Aldi allegedly told Mr. Hemingway that he did not find any gang-related content on his phone, but he was going to take it to the DOC's Security Division. *Id.* After taking the phone to the Security Division, Aldi allegedly was able to retrieve deleted text messages and photographs showing Mr. Hemingway wearing red beads and a red flag, which

allegedly were indicative of gang activity. *Id.* DOC officials allegedly found Mr. Hemingway to be in violation of his parole and sent him back to prison. *Id.*

Upon his return to prison, DOC officials allegedly charged Mr. Hemingway with a Security Risk Group ticket for violating his parole. *Id.* He allegedly remained confined in phase one of the SRG program for 120 days, until his release from DOC custody on February 3, 2017. *Id.*

After he was allegedly arrested again on August 3, 2017, DOC officials allegedly sent Mr. Hemingway to the Hartford Correctional Center as a pretrial detainee. *Id.* After one week, DOC officials allegedly sent him to phase two of the SRG program without a 90-day review under DOC Administrative Directive 6.14.[3] *Id.* at 13. On October 17, 2017, Mr. Hemingway allegedly pled guilty to criminal possession of a firearm and was sentenced to seven years of incarceration, followed by three years of probation. *Id.*; *State v. Hemingway*, C.A. No. H14-HCR17-0692341-S (Conn. Super. Ct. Oct. 17, 2017). Instead of receiving his required, 90-day SRG classification review, Director Santiago allegedly provided Mr. Hemingway with six-month reviews, which Hemingway found to be "meaningless," because he could not contest his SRG

---

[3] DOC Administrative Directive 6.14, § 18 provides, in relevant part:

> Readmission. An inmate discharged from the custody of the Commissioner while designated as a [SRG] Member shall be readmitted on the same status. Upon readmission, all inmates who were previously on [SRG] Member status shall be placed on Administrative Detention status pending placement to appropriate housing. The inmate's status shall be reviewed by the Facility Intelligence Coordinator/Unit Manager within ninety (90) days of readmission. Prior to meeting with the inmate, the Facility Intelligence Coordinator/Unit Manager shall review the inmate's SRG file and notify the inmate of the pending meeting regarding the inmate's SRG status utilizing CN 61409, [SRG] 90-Day Review Notification. The Facility Intelligence Coordinator/Unit Manager shall meet with the inmate and advise the inmate of the results of the review utilizing CN 61407, [SRG] 90-Day Review. The original CN 61407, [SRG] Member 90-Day Review shall be forwarded to the Director of Security or designee and a completed copy of the form shall be forwarded to the inmate upon completion of the review. A recommendation regarding the [SRG] status for each readmitted inmate shall be made by the Unit Administrator and reviewed by the Security Division. The final disposition of continued [SRG] status shall be made by the Director of Security.

designation. *Id.* Director Santiago allegedly used "ready-made language for every other inmate in the SRG program." *Id.*

Mr. Hemingway alleges that he has not received any disciplinary reports in the last two years, and that he has worked as a tierman in the E-Unit at Corrigan for the past year. *Id.* DOC officials are alleged to have never conducted an individualized assessment of the risk Mr. Hemingway poses to the safety and security of their institutions. *Id.* Mr. Hemingway alleges he was in the SRG program solely because of his prior classification and because he failed to complete the program during his first incarceration term. *Id.*

Allegedly, Mr. Hemingway is now confined in phase three of the SRG program at Corrigan. *Id.* He allegedly is subjected to several restrictive and unsanitary conditions in phase three of the program, including:

> Twenty–two to twenty–three hours of in cell confinement;
> No access to congregate religious, vocational, or educational programs;
> No access to a library or books;
> No social contact through the cell door;
> No more than one day of vigorous exercise at the facility gymnasium;
> No inside recreation;
> No means of cleaning the cell, *e.g.,* access to a toilet brush;
> Searches every time he exits the cell;
> No more than $40 in commissary;
> No television, CD players, or CDs in the cell;
> No hot water in the cells;
> No access to a hotpot to heat up food or drinks;
> No visitation privileges for anyone that is not an immediate family member;
> No supervised release time to attend wake or funeral services for family members.

*Id.* at 14–16.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints

against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134,  n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless

6

distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.   DISCUSSION

Mr. Hemingway alleges that the Defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights by (1) placing him in the Security Risk Group program based on information illegally obtained from his mobile phone, (2) failing to conduct required classification reviews under the DOC Administrative Directives, and (3) subjecting him to inhumane conditions in the SRG units.

The Court will address each of these claims in turn.

### A.  The First Amendment Retaliation Claim

Mr. Hemingway claims that SRG Coordinator Aldi violated his First Amendment right to free speech by classifying him as an SRG inmate based on text messages and photos confiscated from his cell phone, while he was paroled. *See* Compl. at 7. The Court construes these allegations as stating a claim of unlawful retaliation based on Mr. Hemingway's exercise of free speech.

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, C.A. No. 3:11-CV-631 (SRU), 2012 WL 2716355, at *6 (D. Conn.

July 9, 2012). "To prevail on a First Amendment retaliation claim, [Mr. Hemingway] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against [him], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (fourth alteration in the original) (internal quotation marks omitted).

"In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, C.A. No. 08–CV–941 (TJM/CFH), 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (alteration in original) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) ("[P]risoners may be required to tolerate more than average citizens, before alleged retaliatory action against them is considered adverse."). In order to allege causation, Mr. Hemingway must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (alteration in the original) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

Courts in this District have recognized First Amendment retaliation claims from inmates assigned to the SRG program as sufficient to survive an initial review order under 28 U.S.C. § 1915A(b) when based on written or photographic material obtained from similar sources. *See Scozzari v. Santiago*, C.A. No. 3:19-CV-00229 (JAM), 2019 WL 1921858, at *3–4 (D. Conn. Apr. 29, 2019) (noting that "placing an inmate in distinctly harsher conditions because of his protected speech activity is a sufficiently adverse action to support a retaliation claim.") (citing *Hayes v. Santiago*, C.A. No. 3:18-CV-01758 (JAM), 2018 WL 5456494, at *3 (D. Conn. Oct.

8

29, 2018); *see also Hayes,* 2018 WL 5456494, at *3 ("At this initial stage, however, the allegation that [DOC officials] placed [the claimant] in segregation because of what he posted on social media is sufficient for the First Amendment claim to survive this Court's initial review."). Here, Mr. Hemingway alleges that SRG Coordinator Aldi confiscated text messages and photographs from his cell phone, which he then used as an evidentiary basis to classify Mr. Hemingway as an SRG inmate.

Based on these allegations, the First Amendment retaliation claim against SRG Coordinator Aldi will proceed at this time.

### B.  The Fourth Amendment Claim

"The Fourth Amendment prohibits unreasonable searches and seizures." *Milner v. Duncklee,* 460 F. Supp. 2d 360, 367 (D. Conn. 2006). "A 'search' in the context of the Fourth Amendment occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information." *Conroy v. Caron*, 275 F. Supp. 3d 328, 340 (D. Conn. 2017) (citing *Florida v. Jardines*, 569 U.S. 1 (2013)). "A plaintiff may bring a [Section] 1983 action for an unreasonable warrantless search." *Doe v. Bridgeport Police Dept.*, C.A. No. CIV.A. 3:00-CV-2167 (JCH), 2000 WL 33116540, at *4 (D. Conn. Nov. 15, 2000). If the plaintiff has a reasonable expectation of privacy in the place being searched, the defendants have the burden of showing that the search was valid because it satisfied an exception to the warrant requirement. *Id.*

Mr. Hemingway claims that SRG Coordinator Aldi's confiscation of the material from his cell phone without a warrant violated his Fourth Amendment protection against unreasonable searches and seizures. *See* Compl. at 7. Mr. Hemingway alleges that he gave SRG Coordinator

Aldi the password to unlock his phone, and SRG Coordinator Aldi initially found no evidence of gang affiliation. *Id.* at 11. After taking the device to the DOC Security Division, however, SRG Coordinator Aldi was allegedly able to retrieve deleted text messages and photographs showing Mr. Hemingway displaying gang colors. *Id.* It is not entirely clear from these allegations whether (1) Mr. Hemingway consented to the search of the phone by providing his password, or (2) SRG Coordinator Aldi's search of the phone was otherwise valid.

Nevertheless, these allegations are sufficient for the Fourth Amendment claim against SRG Coordinator Aldi to proceed at this time.

### C. The Fifth Amendment Double Jeopardy Claim

Mr. Hemingway next claims that the parole violation and second SRG affiliation finding in 2017 violated his Fifth Amendment protection against double jeopardy because they were both based on the same evidence found in his cell phone. *See id.* at 7.

But the Second Circuit has long held that conduct that violates the conditions of a parole or supervised release term does not constitute a separate criminal offense, nor does a prison disciplinary proceeding. *See U.S. v. Meeks*, 25 F.3d 1117, 1121–23 (2d Cir. 1994) (*abrogated on other grounds* by *Johnson v. U.S.*, 529 U.S. 694 (2000)) (holding that because "supervised release is an integral part of the punishment for the underlying offense and is essentially the same as parole . . . [and a] violation is punishable whether or not it constitutes criminal conduct . . . [and] the violator may be punished both in a supervised-release proceeding and in a separate criminal prosecution without offending principles of double jeopardy, and . . . a violation of supervised release need not be established beyond a reasonable doubt, or in a trial before a jury . . . any provision for punishment for a violation of supervised release is an increased punishment for the underlying offense."); *Mitchell v. Keane*, 974 F. Supp. 332, 343 (S.D.N.Y. 1997) ("[i]t is .

. . well settled that punishment imposed by prison authorities for infractions of prison regulations does not generally bar a subsequent criminal prosecution for the same conduct.").

Accordingly, Mr. Hemingway's Fifth Amendment claim will be dismissed.

### D.  The Fourteenth Amendment Due Process Claim

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has developed a two-step process for adjudicating a claim of a violation of procedural due process. *See e.g.*, *Swarthout v. Cooke*, 562 U.S. 216 (2011) (*per curiam*). As the Court explained in *Swarthout*, "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Id.* at 219.

Where the inmate's detention in restrictive confinement is administrative in nature, such as a Security Risk Group classification, his confinement is assessed under the standard in *Hewitt v. Helms*, 459 U.S. 460 (1983).[4] Under *Hewitt*, the inmate must receive "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt*, 459 U.S. at 476; *see also Scozzari*, 2019 WL 1921858, at *2 (reviewing Defendants' failure to provide plaintiff with notice of charges against him).

Indeed,  "[a]s long as…the non-adversary proceeding is held within a reasonable time following the inmate's transfer to administrative segregation, 'and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied."

---

[4] *Hewitt* was overruled in part by *Sandin v. Conner*, 515 U.S. 472 (1995) on other grounds. It is still often cited for the standards discussed here. *See e.g.*, *Reynolds v. Arnone*, 402 F. Supp. 3d 3, 29 (D. Conn. 2019).

*Jusino v. Rinaldi*, C.A. No. 3:18-CV-2004 (MPS), 2019 WL 2720763, at *6 (D. Conn. June 27, 2019) (internal citation omitted).

Mr. Hemingway alleges that he was reassigned to the SRG unit in 2017, based on his prior classification from 2015 and the evidence obtained from his cell phone, but without a review of his classification as an SRG member or the ability to express his views regarding his classification. *See* Compl. at 5–9, 13.

Based on these allegations, the Court will permit his Fourteenth Amendment due process claim to proceed against Director Whidden, Director Santiago, SRG Coordinator Aldi, and SRG Coordinator Papoosha, who served as the Directors of Security and SRG Coordinators during the time of Mr. Hemingway's reassignment to, and continued confinement in, the SRG program.

Mr. Hemingway has not, however, stated a plausible due process claim against Officer Emma or Lieutenant Cheesit. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). Mr. Hemingway is suing Officer Emma for failing to "bring [him] a paper to sign" in accordance with the 90-day SRG classification review outlined in Administrative Directive 6.14. *See* Compl. at 5. He is suing Lieutenant Cheesit because, as the Unit Manager for the restrictive housing unit, "he must initiate the 90-day review and submit it to his supervisor," the Director of Security. *Id.* at 8. These allegations, alone, are insufficient to establish personal liability against Emma and Cheesit for a Fourteenth Amendment due process violation. An official's failure to act in accordance with prison regulations or policies does not establish that he or she violated a prisoner's constitutional rights. *See Fine v. UConn Medical*, C.A. No. 3:18-CV-530 (JAM), 2019

WL 236726, at \*9 (D. Conn. Jan. 16, 2019) (citing *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011)).

Therefore, the Fourteenth Amendment claims against Director Whidden, Director Santiago, SRG Coordinator Aldi, and SRG Coordinator Papoosha will proceed.

The Fourteenth Amendment claims against Officer Emma and Lieutenant Cheesit will be dismissed, although Mr. Hemingway may try to correct these deficiencies in an amended pleading.

### E.  The Inhumane Conditions of Confinement Claim

The standard for analyzing a claim of inhumane conditions of confinement is dependent on whether the claimant is a prisoner or pretrial detainee. Conditions of confinement claims by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment because pretrial detainees have not been convicted of a crime and thus may not be punished in any manner – neither cruelly and unusually nor otherwise. *See Rogers v. Faucher*, C.A. No. 3:18-cv-1809 (JCH), 2019 WL 1083690, at \*4 (D. Conn. Mar. 7, 2019); *Sadowski v. Dyer*, C.A. No. 3:18-CV-1074 (KAD), 2018 WL 4854626, at \*4 (D. Conn. Oct. 5, 2018); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Here, Mr. Hemingway alleges having been subjected to several inhumane conditions, such as not having access to hot water or toilet cleaning supplies, while he was a pretrial detainee from August 2017 to October of 2017. Compl. at 14–15. He alleges that the inhumane conditions continued while he was incarcerated following his criminal sentence in October 2017. *See Id.* at 14–16. The Court will analyze his claim under both the Eighth Amendment and Fourteenth Amendment standards.

To establish an Eighth Amendment violation based upon inhumane conditions, a prisoner must satisfy both an objective standard and a subjective standard. The objective standard requires the plaintiff to show that "the prison officials' transgression was "sufficiently serious." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (internal citation omitted). "Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities." *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison officials cannot expose prisoners to conditions that may "pose an unreasonable risk of serious damage to [the prisoners'] future health." *Id.* (citing *Phelps*, 308 F.3d at 185).

The subjective standard requires the plaintiff to demonstrate that "the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.* with 'deliberate indifference to inmate health or safety.'" *Id.* (citing *Phelps*, 308 F.3d at 185; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). For example, in *Helling v. McKinney*, the Supreme Court discussed how in a previous decision it found there was an Eighth Amendment violation, when "inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease." 509 U.S. 25, 33 (1993) (referencing *Hutto v. Finney*, 437 U.S. 678, 681 n. 3 (1978) (finding prisoners' Eighth Amendment rights were violated when "rape was so common and uncontrolled [in the facility] that some potential victims dared not sleep.").

Similarly, in order for a Fourteenth Amendment claim against the conditions of confinement to be found plausible, it must satisfy both an objective standard and a subjective standard. *See Rogers*, 2019 WL 1083690, at *4. ("The detainee may state a section 1983 claim for unconstitutional conditions of confinement by showing that the officials acted with deliberate

14

indifference to the challenged conditions . . . This showing consists of both an objective and subjective prong.") (internal citation omitted).

"Objectively, the pretrial detainee must allege facts showing that the challenged conditions were sufficiently serious – that is they 'posed an unreasonable risk of serious damage to his health." *Id.* (internal citation omitted).

Subjectively, the pretrial detainee must allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Construed liberally, Mr. Hemingway has alleged facts showing that he was subjected to inhumane conditions of confinement as both a pretrial detainee and a sentenced prisoner, particularly in light of plumbing conditions in his cell. He has not alleged any facts, however, showing how any of the defendants were personally involved in creating or failing to remedy these conditions. There are no facts indicating whether Mr. Hemingway ever alerted any of the defendants about these conditions.

Therefore, the Eighth and Fourteenth Amendment conditions of confinement claims will be dismissed, although Mr. Hemingway may try to correct these deficiencies in an amended pleading.

### F.  The Request for Declaratory Relief

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. Am. Inst. of Certified Pub. Accts.*, C.A. No. 10-CV-2291

(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). "Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Toliver v. Comm'r Semple*, No. 3:16-CV-1899 (SRU), 2016 WL 7115942, at *3 (D. Conn. Dec. 6, 2016) (referencing *In re Combustion Equip. Assoc., Inc.*, 838 F.2d 35, 37 (2d Cir. 1988)).

In addition to damages, Mr. Hemingway seeks a declaration that the acts and omissions described in the Complaint violate his rights under the Constitution and laws of the United States. Compl. at 18. But, Mr. Hemingway has not identified any ongoing legal disputes that warrant declaratory relief.

Therefore, his request for declaratory relief will be dismissed, although Mr. Hemingway may try to correct this deficiency in an amended pleading.

## IV.   ORDERS

1.   The following claims will proceed: the First Amendment claim against SRG Coordinator Aldi; and the Fourteenth Amendment due process claims against Director of Security Whidden, Director of Security Santiago, SRG Coordinator Aldi, and SRG Coordinator Papoosha.

2.   The following claims will be dismissed: The Fourteenth Amendment due process claims against Correction Officer Emma and Lieutenant Cheesit; The inhumane conditions of confinement claim; the Fifth Amendment claim; and the request for declaratory relief.

3.   To the extent Mr. Hemingway cure the deficiencies identified above in the dismissed Claims, he must file an amended complaint by **November 6, 2020.**

4.  Failure to file an amended complaint by **November 6, 2020** will be deemed an abandonment of any of the dismissed claims. Any amended complaint must allege facts showing each defendant's personal involvement in the alleged constitutional violations.

5.  The Clerk of Court shall verify the current work addresses for Director of Security Whidden, Director of Security Santiago, SRG Coordinator Aldi, and SRG Coordinator Papoosha with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint, ECF No. 1, to them at the confirmed addresses by **October 16, 2020**, and report on the status of the waiver requests by **October 30, 2020** after mailing. If any defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person service by the U.S. Marshals Service on the defendant, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

6.  The Clerk of Court also shall mail a courtesy copy of the Complaint and this Order to the Department of Corrections Office of Legal Affairs.

7.  The Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **December 18, 2020 or** within **sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them, which ever date is later. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims above. The Defendants may also respond with any and all defenses permitted by the Federal Rules.

8.      Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **April 2, 2021**. Discovery requests need not be filed with the Court.

9.      The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found using the following URL: **http://ctd.uscourts.gov/administrative-standing-orders**.

**10.**    All motions for summary judgment shall be filed by **May 7, 2021**. According to D. Conn. L. Civ. R. 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21)** days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

11.      If Mr. Hemingway changes his address at any time during the litigation of this case, D. Conn. L. Civ. R. 83.1(c)(2) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Hemingway must give notice of a new address, even if incarcerated. He should write: "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to only put the new address on a letter without indicating that it is a new address. If Mr. Hemingway has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He must also notify the defendants or defense counsel of his new address.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE